UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  | PRISONER |
|---|---|---|
| EDUARDO MARTINEZ | : | CIVIL NO. 3:00CV1140(DJS) |
| v. | : | |
| CAPTAIN WEIR, ET AL. | : | AUGUST 30, 2005 |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

This case is a civil rights action by Eduardo Martinez, an inmate of the Connecticut Department of Correction, alleging that on October 28, 1999, while he was incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, officers used excessive force on him in violation of his Eighth Amendment Rights. Amended Complaint, p. 1. The defendants are correctional officers and supervisors allegedly involved in the events.

We urge the Court to render Summary Judgment for the defendants because:

1.      The Eleventh Amendment bars this action against the defendants in their official capacities.

2.      The State is not a "person" subject to liability under 42 U.S.C. § 1983.

3.      The plaintiff has failed to exhaust his prison administrative remedies required by the Prisoner Litigation Reform Act.

4.      The Amended Complaint fails to state a claim upon which relief can be granted.

5.      The defendants are protected by their qualified immunities.

6.      The Court should decline to accept jurisdiction over any state law claims in this case.

**FACTS**

The plaintiff, Eduardo Martinez, is a sentenced inmate of the Connecticut Department of Correction.  At the times referenced in the Amended Complaint, the defendants were employed in various capacities as officials at the MacDougall-Walker Correctional Institution in Suffield, Connecticut.  Def. Statement, paras. 1, 2.  In October, 1999, plaintiff was a sentenced inmate incarcerated at the MacDougall-Walker facility serving a sentence for the crimes of Robbery, Assault in the Second Degree with a Firearm, and Contempt of Court.  Def. Statement, para. 3.

On October 28, 1999, the plaintiff was on full restraint status in segregation due to his recent disruptive, destructive and violent behavior.  While in the dayroom of the segregation unit for recreation, at about 10:05 a.m., he was observed spitting on the control center windows and banging and scraping the dayroom doors with his handcuffs, and attempting to rip the receiver off the telephone.  Later in the afternoon, he was flushing his toilet continuously in an attempt to flood his cell.  He also covered the window of his cell to prevent staff observation and refused orders to remove the obstruction.  Def. Statement, para. 4.

In response to these events, custody supervisors made a decision to place the subject in four point restraints, in order to prevent him from harming himself, others, and destroying the facility, pursuant to DOC Directive 6.5.  Def. Statement, para. 5.  An extraction team was assembled, consisting of the defendant Correctional Officers Corl, Thibodeau, DeRota and others, under the supervision of the defendant Lieutenant Madden.  The defendant Captain Weir was also present during some of the events.  Def. Statement, para. 6.

Staff entered plaintiff's cell at approximately 3:10 p.m. utilizing a shield to contain plaintiff against the wall during entry.  The shield helps to contain the subject allowing others to

2

enter safely. This was especially important in this case because plaintiff had recently been violent and spitting. Plaintiff did not resist, and he was placed on his bed, face down. The procedure was videotaped.[1] Def. Statement, para. 7. After the plaintiff was placed on his bed, soft restraints were applied. No injuries were observed on the plaintiff and he made no complaints of injury. Def. Statement, para. 8.

Later in the afternoon, it was observed that plaintiff had removed one of the soft restraints. At about 3:35 p.m., the extraction team re-entered the cell. At this time, the soft restraints were replaced with hard restraints. Officer Thibodeau had some difficulty removing the key from the handcuff on plaintiff's right wrist. Officer Corl eventually removed the key and the team exited the cell. Staff did not suspect that the handcuff was broken. Def. Statement, paras. 9, 10.

Also at this time, staff noticed that plaintiff had a scratch on the bridge of his nose. Plaintiff complained about the scratch, and it was noted in the reports and later photographed. It was not known how the scratch was sustained, but it was not caused by staff. Def. Statement, paras. 11, 12.

At about 5:00 p.m., when officers returned to plaintiff's cell to remove his restraints so that he could eat dinner, staff were unable to unlock the right wrist handcuff, apparently due to a stripped keyhole. Staff returned to plaintiff's cell at about 5:20 p.m. and cut the handcuffs from his wrist using a bolt cutter. Def. Statement, paras. 13, 14.

---

[1] Defendants cannot supply the pro se plaintiff inmate with a copy of the videotapes provided the Court with this motion due to security restrictions. However, prison staff earlier played the tapes for him, and he viewed them, in response to his discovery request.

At no time was plaintiff in danger due to this malfunction.  In an emergency, the handcuff could have been removed from the other end attached to the bed to detach plaintiff, if necessary. Def. Statement, para. 15.

At no time was excessive force used on the plaintiff, and staff caused no injury to plaintiff.  Def. Statement, para. 16.  Plaintiff was removed from the four point restraints at 7:00 p.m. without incident.  Def. Statement, para. 17.

At the time of these events, the Department of Correction had an administrative remedy available for inmates to complain about conditions of their confinement and conduct of officers in DOC Directive 9.6 (Inmate Grievances).  Available records indicate that plaintiff filed a grievance in the matter, but later withdrew it.  Plaintiff also received a Disciplinary Report for Destruction of Property in this incident, and he pled guilty.  Def. Statement, paras. 18, 19, 20.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."  It has been held that summary judgment may be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and to which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 538 (1986); see also, Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 568-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a motion for summary judgment is adequately supported by documentary exhibits, depositions, answers to interrogatories or further affidavits, it must be controverted by a similar

response setting forth specific facts showing that there is a genuine issue for trial, absent which summary judgment shall be entered, if appropriate. Foster v. Turner Broadcasting, 844 F.2d 955, 959 (2nd Cir. 1988), cert. denied, 488 U.S. 994 (1988).  In other words, there must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  A party opposing summary judgment may not rely on conjecture or conclusory assertions that the other party is not telling the truth.  See Gottlieb v. County of Orange, 84 F.3d. 511, 518 (2nd Cir. 1996).  Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose.  See e.g., Celotex, supra; H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879, F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. (1986), cert. denied, 480 U.S. 932 (1987).  It is particularly appropriate in cases under 42 U.S.C. § 1983 involving insubstantial claims such as this case.  Harlow v. Fitzgerald, 457 U.S. 800, 816, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

## ARGUMENT

### 1.    The Eleventh Amendment Bars This Action Against The Defendants In Their Official Capacities

It is now well established that a suit against a State official in his official capacity is, in actuality, a suit against the State.  Brandon v. Holt, 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985); Schiff v. Kerrigan, 625 F.Supp. 704, 707 n.7 (D.Conn. 1986).  The real party in interest is the State.  Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).  It is equally well settled that the doctrine of sovereign immunity embodied by the

Eleventh Amendment precludes a suit for damages against a state and its agencies. <u>Edelman v. Jordan</u>, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The Eleventh Amendment[2/] is a constitutional limitation on the federal judicial power established in Article III, Section 2 of the United States Constitution in actions brought by a citizen against his own state. <u>Pennhurst State School & Hospital v. Halderman</u> (<u>Pennhurst II</u>), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2 67 (1984); <u>Ex Parte State of New York No. 1</u>, 256 U.S. 490, 491, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); <u>Hans v. Louisiana</u>, 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); <u>Minotti v. Lensink,</u> 798 F.2d 607, 609 (2nd Cir. 1986). Of course, a sovereign's Eleventh Amendment immunity may be waived by an unequivocally expressed consent to suit. <u>Pennhurst</u>, <u>supra</u>, at 99; <u>see, e.g.</u>, <u>Edelman v. Jordan</u>, 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); <u>Clark v. Barnard</u>, 108 U.S. 436, 477, 2 S.Ct. 878, 27 L.Ed. 780 (1883). Consent means an explicit statutory provision granting permission to sue. <u>Florida Dep't. of Health v. Florida Nursing Home Association</u>, 450 U.S. 147, 150, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); <u>see</u> <u>also</u>, <u>Duguay v. Hopkins</u>, 191 Conn. 222, 227, 464 A.2d 45 (1983); <u>Comba v. Ridgefield</u>, 177 Conn. 268, 273, 413 A.2d 859 (1979). To whatever extent the plaintiff is

---

[2]  The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any
> suit in law or equity, commenced or prosecuted against one of the United States
> by citizens of another state or by citizens or subjects of any foreign state.

Despite its limited language, it is well settled that this provision precludes federal court jurisdiction over suits brought against the state by its own citizens, absent consent. <u>Pennhurst State Schools & Hospital v. Halderman</u> (<u>Pennhurst II</u>), 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); <u>Edelman v. Jordan</u>, 415 U.S. 651, 673-74, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); <u>see</u> <u>also</u>, <u>Red Star Towing & Transportation Co. v. State of Connecticut</u>, 431 F.Supp. 1003, 1004 (D.Conn. 1976).

deemed to sue the defendants in their official capacities, he did not, and cannot, allege consent to

suit.  Consequently, summary judgment should be rendered in defendants' favor on this point.

**2.      The State Is Not A "Person" Subject To Liability Under 42
U.S.C. § 1983**

42 U.S.C. § 1983 provides that, "Every <u>person</u>, who, under color of any statute,

ordinance, regulation, custom or usage, of any state or territory, subjects ... any citizen ... to the

deprivation of any rights ... shall be liable to the party injured in an action at law, suit in equity,

or other proper proceeding for redress."  (Emphasis added).  The United States Supreme Court

has refused, in view of the state's traditional sovereign immunity and the Eleventh Amendment,

to construe the word "person" as including a State or its agencies.  <u>Will v. Michigan Dept. of

State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); <u>see</u> <u>also</u> <u>Krozser v. New

Haven</u>, 212 Conn. 415, 562 A.2d 1080 (1989), <u>cert.</u> <u>denied</u>, 493 U.S. 1036 (1990).  Therefore, to

the extent that this action is against the State through its officials, it is barred for this reason as

well.

**3.      The Plaintiff Has Failed To Exhaust His Prison Administrative
Remedies Required By The Prisoner Litigation Reform Act**

Another issue in this case is whether the plaintiff is barred from bringing this lawsuit for

failure to exhaust prison administrative remedies.  The Federal Prisoner Litigation Reform Act of

1995, a law enacted to help bring relief to a civil justice system overburdened by frivolous

prisoner lawsuits, provides that "No action shall be brought with respect to prison conditions …

by a prisoner confined in any jail, prison or other correctional facility until such administrative

remedies as are available are exhausted."  This rule applies in this case, and the evidence in this

case shows that the Connecticut Department of Correction had an administrative remedy

available to the plaintiff in the form of its Inmate Grievance procedure, Directive 9.6.  42 U.S.C.

§ 1997e(a); Porter v. Nussle, 534 U.S. 516, 531, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Booth v.

Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); Berry v. Kerik, 345 F.3d 126

(2nd Cir. 2003); Ortiz v . McBride, 380 F.3d 649, 663 (2nd Cir. 2004).

     To satisfy the exhaustion requirement, plaintiff must exhaust, in writing on DOC forms,

all steps in the DOC grievance procedure, including any appeals which may be available.

However, where a favorable determination is received on an early step, no further appeal is

required.  Booth v. Churner, supra at 735-36; Ortiz v. McBride, supra at 653; Ziemba v. Clark,

2003 U.S. Dist. LEXIS 22117 (D. Conn. 2003); Hemphill v. New York, 198 F. Supp. 2d 549

(S.D.N.Y. 2002); Reyer v. Ponzal, 206 F.Supp. 2d 431 (W.D.N.Y. 2002).  Oral complaints do

not suffice to exhaust administrative remedies where the complaint is of no avail. Ortiz v.

McBride, supra at 654.

     In this case available records show that plaintiff withdrew his grievance.  See Def.

Statement, para. 19.  Accordingly, summary judgment should be entered for the defendants

because the plaintiff failed to exhaust his prison administrative remedies.

     4.     **The Amended Complaint Fails To State A Claim Upon Which Relief Can Be Granted**

     It is true that Rule 8(a) F.R.Civ.P., broadly governs pleadings in Federal Court, and that

notice pleading normally requires only a "short plain statement" of a claim for relief.  See

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 163, 168, 113

S.Ct. 1160, 122 L.Ed.2d 517 (1993); Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d

80 (1957); Batista v. Rodriguez, 702 F.2d 393, 397 (2nd Cir. 1983).  Also, it has been stated that,

"Complaints relying on civil rights statutes are plainly insufficient unless they contain some

specific allegation of fact indicating a deprivation of civil rights, rather than simple conclusions."

Koch v. Yunich, 533 F.2d 80, 85 (2nd Cir. 1976); see, e.g. Powell v. Jervis, 460 F.2d 551, 533

(enc Cir. 1976); Louis v. Ward, 444 F.Supp. 1107, 1109 (S.D.N.Y. 1978); see also Branch v.

Tunnell, 14 F.3d 449 (9th Cir. 1994).  The amended complaint in this case fails to state a claim

upon which relief can be granted.

      In this case, plaintiff alleges that the defendants used excessive force on him in violation

of Eighth Amendment rights on October 28, 1999, resulting in his face injury.  See Amended

Complaint.    Under  the  Eighth  Amendment,  prisoners  have  a  right  to  be  free  from  the

"unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The

inquiry focuses on whether the physical force was indeed unnecessary and wanton.  Hudson v.

McMillian, 503 U.S. 1, 6-7 (1992).  In making this determination, the court should consider both

the objective and subjective components of an alleged violation.  Davidson v. Flynn, 32 F.3d 27,

29 (2nd Cir. 1994) citing Hudson, 503 U.S. at 8.   The objective element pertains to the

seriousness of the injury, while the subjective element looks to the state of mind of the

defendant.  Hudson, 503 U.S. at 8; Davidson, 32 F.3d at 29-30; Romano v. Howarth, 998 F.2d

101, 105 (2nd Cir. 1993).

      Considering the subjective element, the core inquiry for the court in assessing a

prisoner's claim that prison officials subjected him or her to cruel and unusual punishment by

using excessive force is whether the prison officials acted "in a good faith effort to maintain or

restore prison discipline, or maliciously and sadistically to cause harm." Hudson, supra at 7.  Of

course, not every push or shove, even if it later seems unnecessary in the peace of a judge's

chambers, violates a prisoner's constitutional rights. Johnson v. Glick, 481 F.2d 1028, 1033 (2nd

9

Cir. 1973), <u>cert. denied</u> 414 U.S. 1033 (1973).  Prisons are places of ever present potential for violent confrontation and conflagration.  Prison administrators are responsible for maintaining internal order and discipline and for securing their institutions.  They must be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.  The problems in prisons in America are complex and intractable and the management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force.  <u>Whitley v. Albers</u>, 475 U.S. 312, 332 (1986); <u>Procunier v. Martinez</u>, 416 U.S. 396, 405 (1974); <u>Johnson v. Glick</u>, <u>supra</u>.  In this context, in determining whether the constitutional line has been crossed, the court looks at such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether the force was applied in good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm.  <u>Johnson v. Glick</u>, <u>id</u>.  That defendants may have acted too energetically, or may have committed a common law tort, is not grounds for constitutional liability.  Rather, it must be found that their action shocked the conscience.  <u>Rogin v. California</u>, 432 U.S. 165, 172 (1952); <u>Arroyo v. Schaefer</u>, 548 F.2d 47, 50 (2nd Cir. 1997); <u>Johnson v. Glick</u>, <u>ibid</u>.  In addition, the court does not base its decision on 20/20 hindsight.  The court puts itself in the place of the defendants during the very moments when the events were occurring, and judges the action of the defendants as of that time and under these circumstances.  <u>Graham v. O'Connor</u>, 490 U.S. 392, 396 (1989); <u>Johnson v. Glick</u>, <u>supra</u>.

In the instant case, the undisputable material facts show that the defendants responded to a violent, disruptive and destructive inmate in accordance with prison directives and with a justified and measured amount of force necessary to control the situation for the safety of all. The use of four point restraints to control a violent and aggressive inmate for short periods, under frequent checks, as in this case, is not unlawful.  See, e.g., Anderson v. Bradnan, 2001 U.S. App. LEXIS 15359 (2nd Cir. 2001) citing Jolly v. Coughlin, 76 F.3d 468, 473 (2nd Cir. 1996); Zigmund v. Foster, 106 F.Supp. 2d 352 (D.Conn. 2000).  That a handcuff breaks in the process does not constitute an Eighth Amendment violation.  Lopez v. Reynolds, 998 F.Supp. 252, 258 (W.D.N.Y. 1997).

The scratch sustained by plaintiff was not caused by defendants.  However, assuming arguendo that it was caused by defendants, the injury in this case is obviously minor.  The law does not permit suit over such de minimis injuries.  Romano v. Howarth, 998 F.2d 101, 105 (2nd Cir. 1993) citing Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson v. McMillian, supra.

### 5.    The Defendants Are Protected By Their Qualified Immunity

The defendants in this case, by virtue of their status as public officials who must be allowed to do their job in good faith without fear of being liable for damages each time they make a decision on behalf of the State, are clothed with qualified immunity in this case.  Harlow v. Fitzgerald, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982).

The Supreme Court has held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.  Harlow v. Fitzgerald, supra, at 818.  In order for the immunity to be available, the public

official or employee must have acted under an objectively reasonable belief that his actions were

lawful.  Gomez v. Toledo, 446 U.S. 635, 100 S. Ct. 1920, 64 L.Ed.2d 572 (1980); Eng v.

Coughlin, 858 F.2d 889, 895 (2nd Cir. 1988).

        While the issues of qualified immunity and privilege ordinarily involve issues of fact

which need to be affirmatively pleaded, the Supreme Court has sanctioned the final resolution of

civil rights cases on qualified immunity grounds on motion for summary judgment in appropriate

cases.  See Harlow v. Fitzgerald, supra; see also Cartier v. Lussier, 955 F.2d 841 (2nd Cir. 1992);

Magnotti v. Kuntz, 918 F.2d 364 (2nd Cir. 1990).

        In evaluating a summary judgment motion based on qualified immunity, the court

performs a two-part test.  It first tests whether the facts, viewed in the light most favorable to the

plaintiff, establish a constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct.

2151, 150 L.Ed. 2d 272 (2001).  If they do not, the plaintiff may not recover because he has

suffered no wrong cognizable under § 1983.  See, id.  If the facts do establish a constitutional

violation, however, the court proceeds to the second inquiry, asking whether it would be clear to

a reasonable officer that his conduct was unlawful in the situation he confronted. Id. at 202. If a

reasonable officer could have believed that the challenged conduct was lawful at the time of the

violation, then qualified immunity bars the claim.  See id; Sira v. Morton, 380 F.3d 57, 68 (2nd

Cir. 2004); Luna v. Pico, 356 F.3d 481, 490 (2nd Cir. 2004).  In other words, qualified immunity

shields a government official from suit if his challenged conduct was objectively reasonable in

light of legal rules that were "clearly established" at the time of her actions.  To be clearly

established, a right must have been recognized in a particularized rather than a general sense.  In

other words it is not enough that a general right is clearly established by the Constitution.  The "contours of that right, as they pertain to a particular issue must have been delineated with sufficient clarity that a reasonable official would understand that what he is doing violates that right."  Sira v. Morton, supra at 81 (citations omitted); see also Mozzochi v. Borden, 959 F.2d 1174, 1178 (2nd Cir. 1992).  Where no cases squarely govern the case at bar, and where the facts fall in that "hazy border" of the law, the officer is entitled to qualified immunity.  Brosseau v. Haugen, 125 S.Ct. 596, 600 (2004). This is because "the qualified immunity standard 'gives ample room for mistaken judgments,'" protecting "'all but the plainly incompetent or those who knowingly violate the law.'" Sira v. Morton, supra at 81 quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) and Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

In the instant case, we have found no case squarely holding that officials in the same or similar fact pattern present in the instant case act unconstitutionally.  Thus, it was objectively reasonable for the officials to believe that their actions did not violate those rights.  The plaintiff's allegations should not suffice to subject their governmental officials to the costs of trial.  Harlow, supra, at 817-18.  It follows then, that the public officials in this case should be shielded from any personal liability, and summary judgment may enter in their favor.

Should any part of the complaint survive the Motion for Summary Judgment under consideration, then we respectfully reserve the right to prove the defense at trial.

**6.    The Court Should Decline To Accept Jurisdiction Over Any State Law Claims In This Case**

The District Court may decline to exercise supplemental jurisdiction over state law claims in a case when it has dismissed all claims over which it has original jurisdiction, such as

the § 1983 claims raised in this case.  <u>See</u> 28 U.S.C. § 1376(c)(3).  Where federal claims are dismissed before trial, the state claims should be dismissed as well.  <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966); <u>Baylis v. Marriott Corp.</u>, 843 F.2d 658, 665 (2nd Cir. 1988).

The federal claims in this case should be resolved in favor of the defendants.  If that occurs, then we urge the Court to decline supplemental jurisdiction over the state law claims in this case, if any.

## CONCLUSION

For all of the foregoing reasons, we urge the Court to grant Summary Judgment in favor of the defendants.

DEFENDANTS
Captain Weir, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:    _____/s/_____
       Robert F. Vacchelli
       Assistant Attorney General
       110 Sherman Street
       Hartford, CT  06105
       Federal Bar #ct05222
       E-Mail:  robert.vacchelli@po.state.ct.us
       Tel: (860) 808-5450
       Fax: (860) 808-5591

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was mailed to the following on this 30th day

of August, 2005:

Eduardo Martinez #234198
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071


_____/s/_____
Robert F. Vacchelli
Assistant Attorney General