UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
|  |  | PRISONER |
| EDUARDO MARTINEZ | : | CIVIL NO. 3:00CV1140(DJS) |
| v. | : |  |
| CAPTAIN WEIR, ET AL. | : | AUGUST 30, 2005 |

**AFFIDAVIT OF CAPTAIN MICHAEL MADDEN**

| State of Connecticut | ) | | |
|---|---|---|---|
| | ) ss: Hartford | August 26, 2005 |
| County of Hartford | ) | |

The undersigned, Captain Michael Madden, being duly sworn, deposes and says:

1.   I am employed by the Connecticut Department of Correction as a Captain at the Corrigan-Radgowski Correctional Institution in Uncasville, Connecticut.

2.   In October, 1999, I was a Lieutenant, assigned to the MacDougall-Walker Correctional Institution in Suffield, Connecticut.

3.   On October 28, 1999, the plaintiff was a sentenced inmate at the MacDougall-Walker facility, on four point restraint status in segregation due to his recent disruptive, destructive and violent behavior.  While in the dayroom of the segregation unit for recreation, at about 10:05 a.m., he was observed spitting on the control center windows and banging and scraping the dayroom doors with his handcuffs, and attempting to rip the receiver off the telephone.  Later in the afternoon, he was flushing his toilet continuously in an attempt to flood

his cell. He also covered the window on his cell to prevent staff observation and refused orders to remove the obstruction. See Incident Reports, Exhibit B.

4.     In response to these events, my supervisors made a decision to place the subject in four point restraints, and ordered me to assemble an extraction team to accomplish that procedure. Accordingly, I assembled a team which included the defendants Corl, Thibodeau and DeRota and others. See Videotapes, Exhibits D, E.

5.     At approximately 3:10 p.m., we entered plaintiff's cell utilizing a shield to contain the plaintiff against the wall during entry. The shield helps to contain the subject allowing other officers to enter safely. It was especially important in this case as plaintiff had recently been violent and spitting. Plaintiff did not resist, and he was placed on his bed, face down. The procedure was videotaped and copies of the tapes, which accurately depict the events that I was involved in, are supplied in Exhibits D and E.

6.     At no time during the events of this case did I observe or find evidence of excessive force or injury to the plaintiff caused by staff. The reports and videotapes and discovery responses by the defendants filed in this case are in accord with my observations and record review in this regard. See Reports, Exhibit B; Responses to Interrogatories and Requests for Admissions, Exhibit G.

7.     After the plaintiff was placed on his bed, soft restraints were applied. No injuries were observed on the plaintiff and he made no complaint of injury. See Reports, Exhibit B; Videotapes, Exhibits D, E.

8.     Later in the afternoon, it was observed that plaintiff had removed one of the soft restraints. At about 3:35 p.m., the extraction team, which included myself as supervisor and the

2

same defendants and others, re-entered the cell. See Reports, Exhibit B; Videotapes, Exhibits D, E.

9.   At this time, staff replaced the soft restraints with hard restraints. Staff had some difficulty removing the key from the handcuff on plaintiff's right wrist, but they eventually removed the key and exited the cell. We did not suspect that the handcuff was broken. See Aff. of Corl; Videotapes, Exhibits D, E; Responses to Interrogatories and Requests for Production.

10.   Also, at this time, I noticed that plaintiff had a scratch on the bridge of his nose. Plaintiff complained about the scratch and it was noted in the reports and later photographed. See Reports, Exhibit B.

11.   I did not observe, and I found no evidence, that this scratch and was caused by any activities of staff. See Reports, Exhibit B; Videotapes, Exhibits D, E; Aff. of Corl; see also, Responses to Interrogatories and Requests for Production, Exhibit G.

12.   I was not present, but, according to the reports and records and videotapes, at about 5:00 p.m., when officers returned to plaintiff's cell to remove his restraints so that he could eat dinner, staff were unable to unlock the right wrist handcuff apparently due to a stripped keyhole. See Reports, Exhibit B; Videotapes, Exhibits D, E.

13.   At no time was plaintiff in any danger due to this malfunction. Moreover, in an emergency, the handcuff could have been removed from the other end attached to the bed to detach plaintiff, if necessary.

14.   According to the reports and videotapes, staff returned to plaintiff's cell at about 5:20 p.m. and cut the handcuff from his wrist, using a bolt cutter. See Reports, Exhibit B; Videotapes, Exhibits D, E.

3

Dated at Hartford, Connecticut this 26th day of August, 2005.

Captain Michael Madden

Subscribed and sworn to before me this 26th day of August, 2005.

Commissioner of the Superior Court

DEFENDANTS
Captain Weir, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:    _____
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05222
E-Mail:  robert.vacchelli@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 30th day

of _____August_____ 2005:

Eduardo Martinez #234198
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071

_____
Robert F. Vacchelli
Assistant Attorney General

5