UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | PRISONER |
|---|---|---|
| EDUARDO MARTINEZ | : | CIVIL NO. 3:00CV1140(DJS) |
| v. | : | |
| CAPTAIN WEIR, ET AL. | : | AUGUST 30, 2005 |

## DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT

The defendants, Captain Weir, et al., by and through their undersigned counsel, hereby submit the following material facts as to which the defendants contend there is no issue to be tried:

1.     The plaintiff, Eduardo Martinez, is a sentenced inmate of the Connecticut Department of Correction.  Amended Complaint, Parties, para. 3; Answer, Parties, para. 1.

2.     At the times relevant to plaintiff's Amended Complaint, the defendants, Kimberly Weir, Michael Madden, Fred DeRota, Michael Thibodeau and Edward Corl were employed in various capacities as officials of the Connecticut Department of Correction at MacDougall-Walker Correctional Institution in Suffield, Connecticut.  Amended Complaint, Parties, paras. 4-8; Answer, Parties, paras. 2-6.

3.     In October, 1999, the plaintiff was a sentenced inmate incarcerated at the MacDougall-Walker facility, serving a sentence for the crimes of Robbery in the First Degree, Assault in the Second Degree with a Firearm, and Contempt of Court.  See Aff. of Weir, para. 3; Exhibit A.

4.       On October 28, 1999, the plaintiff was on full restraint status, in segregation, due to his recent disruptive, destructive and violent behavior.   While in the dayroom of the segregation unit for recreation, at about 10:05 a.m., he was observed spitting on the control center windows and banging and scraping the dayroom doors with his handcuffs, and attempting to rip the receiver off the telephone.   Later in the afternoon he was flushing his toilet continuously in an attempt to flood his cell.   He also covered the window of his cell to prevent staff observation and refused orders to remove the obstruction.   Aff. of Weir, para. 4; Aff. of Madden, para. 3; Reports, Exhibit B.

5.       In response to these events, custody supervisors made a decision to place the subject in four point restraints, in order to prevent him from harming himself, others and from damaging the facility, pursuant to Directive 6.5.   Aff. of Weir, para. 5; Aff. of Madden, para. 4; Directive, Exhibit C.

6.       To accomplish this, an extraction team was assembled to enter the cell and restrain plaintiff by his arms and legs to his bed.   The team was under the supervision of the defendant Lieutenant, now Captain, Michael Madden.   The team included the defendant Correctional Officer, now Lieutenant Edward Corl; the defendant Correctional Officer Michael Thibodeau; and the defendant Correctional Officer Fred DeRota and others.   The defendant Captain, now Major Kimberly Weir, was also present for some of the events.   Aff. of Weir, para. 6; Aff. of Madden, para. 4; Aff. of Corl, para. 3; Videotapes, Exhibits D and E.

7.       Staff entered the plaintiff's cell at approximately 3:10 p.m. utilizing a shield to contain plaintiff against the wall during entry.   The shield helps to contain the subject allowing other officers to enter safely.   This was especially important in this case because plaintiff had

recently been violent and spitting.  Plaintiff did not resist, and he was placed on his bed, face down.  The procedure was videotaped.  Aff. of Weir, para. 7; Aff. of Madden, para. 5; Aff. of Corl, para. 5; Videotapes, Exhibits D and E.

8.      After the plaintiff was placed on his bed, soft restraints were applied.  No injuries were observed on the plaintiff and he made no complaints of injury.   Aff. of Weir, para. 9; Aff. of Madden, para. 7; Aff. of Corl, para. 7; Reports, Exhibit B; Videotapes, Exhibits D and E.

9.      Later in the afternoon, it was observed that plaintiff had removed one of the soft restraints.  At about 3:35 p.m., the extraction team, which again included the defendants DeRota, Thibodeau, Corl and others and supervised by the defendant Madden, re-entered the cell.  Aff. of Weir, para. 10; Aff. of Madden, para. 8; Aff. of Corl, para. 8; Reports, Exhibit B; Videotapes, Exhibits D and E.

10.     At this time, staff replaced the soft restraints with hard restraints.   Officer Thibodeau had some difficulty removing the key from the handcuff on plaintiff's right wrist. Officer Scott Loos eventually removed the key and staff exited the cell.  Staff did not suspect that the handcuff was broken.  Aff. of Weir, para. 11; Aff. of Madden, para. 9; Aff. of Corl, para. 9; Videotapes, Exhibits D and E.

11.     Also at this time, staff noticed that plaintiff had a scratch on the bridge of his nose.  Plaintiff complained about the scratch, and it was noted in the reports and later photographed.  Aff. of Weir, para. 12; Aff. of Madden, para. 10; Aff. of Corl, para. 10.

12.     It was not known how the scratch was sustained, but it was not caused by staff. Aff. of Weir, para. 13; Aff. of Madden, para. 11; Aff. of Corl, para. 11.

13.     At about 5:00 p.m., when officers returned to plaintiff's cell to remove his restraints so that he could eat dinner, staff were unable to unlock the right wrist handcuff apparently due to a stripped keyhole.  Aff. of Weir, para. 14; Aff. of Madden, para. 12; Aff. of Corl, para. 9; Reports, Exhibit B; Videotapes, Exhibits D and E.

14.     Staff returned to plaintiff's cell at about 5:20 p.m. and cut the handcuff from his wrist using bolt cutters.  Aff. of Weir, para. 16; Aff. of Madden, para. 14; Reports, Exhibit B.

15.     At no time was plaintiff in danger due to this malfunction.  In an emergency, the handcuff could have been removed from the other end attached to the bed to detach the plaintiff, if necessary.  Aff. of Weir, para. 15; Aff. of Madden, para. 13; Aff. of Corl, para. 10.

16.     At no time was excessive force used on plaintiff and staff caused no injury to plaintiff.  Aff. of Weir, para. 8; Aff. of Madden, para. 6; Aff. of Corl, para. 6.

17.     Plaintiff was removed from four point restraints at about 7:00 p.m. without incident.  Aff. of Weir, para. 17; Reports, Exhibit B; Logs, Exhibit F.

18.     At the time of these events, the Department of Correction had an administrative remedy available for inmates to complain about the conditions of their confinement and conduct of officers. See DOC Directive 9.6 (Inmate Grievances), Exhibit H.

19.     Available records indicate that plaintiff filed a grievance concerning this matter, but he withdrew it.  Inmate Grievance Form, Exhibit I.

20.     Plaintiff received a Disciplinary Report for Destruction of Property in this incident, and he pled guilty.  Disciplinary Report, Exhibit J.

DEFENDANTS
Captain Weir, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL


BY:       _____/s/_____
Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, CT  06105
Federal Bar #ct05222
E-Mail:  robert.vacchelli@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591


## CERTIFICATION


I hereby certify that a copy of the foregoing was mailed to the following on this 30th day

of August, 2005:

Eduardo Martinez #234198
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071


      _____/s/_____
Robert F. Vacchelli
Assistant Attorney General