# United States District Court
# District of Connecticut

Eduardo Martinez

v.

Capt. Weir Et.Al.

Docket No.#: 3:00cv1140 (HBS)

2006 MAR 21 P 1:32

Date: March 12, 2006

## PLAINTIFF'S LOCAL RULE 56(a)(2) STATEMENT

The plaintiff, Eduardo Martinez, a Pro-Se litigant hereby submits the following material facts as to which the plaintiff contends there are legitimate issue's to be tried in regards & response to the defendants Local Rule 56(a)(1) Statement:

1) The plaintiff does not contest defendants paragraph (1).

2) The plaintiff does not contest defendants paragraph (2).

3) The plaintiff does not contest defendants paragraph (3) although irrelevant.

4) The plaintiff contest paragraph (4) in-part. On October 28, 1999 the plaintiff was on restraint status in segregation due to being classified as a level(5) Supermax inmate (Administrative Segregation) since February 6, 1998. The plaintiff only admits to what is written in the disciplinary report he plead guilty to which does not include banging nor attempting to rip the reciever off the telephone.
In regards to the allegations of the plaintiff attempting to flood his cell the plaintiff contests such. The plaintiff was moving his bowels & was flushing to remove the smell of feces. All the while the plaintiff had a "Womens Courtesy" sign covering a portion of the window without obstructing the view of the cell from the outside of the cell. As evidenced by the phrase

"Warden's Contact" this signage was not put up with malicious intentions rather it was put in place to alert any female with the intentions of looking in the cell. By Capt. Weir's own admission & her interrogatory responses defendant Weir (the shift commander on 10-28-1999) during her tour at 2:05 pm did not observe or report the plaintiff in any way having the view into the cell obstructed nor did she give the plaintiff any "direct order" to do anything. Also defendant Weir does not recall being present when asked if she noticed anything when she entered the plaintiff's cell on 10-28-1999 that would warrant disciplinary action. Also defendant Weir admits looking into the plaintiff's cell during a routine tour as shift commander. Now as stated by C/O Roberts incident report the plaintiff allegedly obstructed the view from inside the cell & was attempting to flood but as stated in defendant Weir's admissions "I don't recall examining the cell for water on the floor or damage" How is this possible?

In regards to defendant Lt. Madden's aff. para. 3, he was not present nor did he tour the unit anytime after 11:00 am to determine whether any of the allegations set forth by C/O Roberts were at all true. Defendant Madden didn't enter the seg. unit until 3:09 pm along with the extraction team & Capt. Weir (def. DeRota, Thibadeau, & Carl included). All the direct orders given by Lt. Madden were after 3:10 pm none ever prior & defendants DeRota, Thibadeau & Carl never gave any direct orders at all. Lt. Madden also admits that any direct order given by him the plaintiff complied with. C/O Roberts the only person in the entire incident who alleged his direct order wasn't followed never wrote a disciplinary for such that was partial reason for 4 point restraining the plaintiff. Absent the false allegations made by C/O Roberts concerning the issues of attempting to flood & maliciously covering the cell window & disobeying direct orders the plaintiff wouldn't have been 4 point restrained. By C/O Roberts own admission there was no further incident after 10:05 am. At no time did Weir or Madden deem it necessary to 4 point the plaintiff for any incident prior to 1:45 pm on 10-28-1999.

p. 3 # (see Exhibits A; B; C; D; E; F; G; H; I; J; K.)

3) The plaintiff contests paragraph (5) in-part. Capt. Weir made the decission as shift commander to have the plaintiff 4-point restrained sometime 2:10 pm but prior to 2:30 pm contrary to aff. of Weir, para. 5 where she states her superior made the decission to 4-point restrain the plaintiff. Capt. Weir's superior one Major M. Torres the duty officer on 10-28-1999 was not contacted until 3:00 pm about the decission to 4-point restrain the plaintiff. Defendant %o Corl in his Interrogatory response states he was notified that his services were needed as an "extraction team member" on 10-28-1999 at approximately 2:30 pm * the information he relied on were Incident Reports. Defendant Lt. Madden in his Interrogatory response states he was acting under the direction of Capt. Weir. In his Admission response Lt. Madden he admits to being told to assemble an extraction team by Capt. Weir. During discovery Capt. Weir never identified anyone as authorizing 4 points although asked. In regards to using 4-point restraints preventing the plaintiff from causing harm to himself, others, & damaging the facility pursuant to Directive 6.5... the plaintiff at no time expressed or showed any signs of suicidal ideology, self mutilation, nor did a Mental Health professional diagnos the plaintiff as such because he was "NEVER" seen by a Mental Health professional. The plaintiff was simply defiating. There is no record of plaintiff intende to harm himself. In regards to preventing damage to the facility, the shift commander Capt. Weir did not find at any time prior to these events alleged at 1:45 pm on 10-28-1999, that any actions (i.e. 10:05 am incident) by the plaintiff warranted 4-point restraints to be applied to prevent harm to himself, others & damaging the facility. The plaintiff was escorted from the dayroom at around 10:10 am & secured in a "stripped cell" (nothing but a bunk mattress linen & legal work &

personal hygiene items) and on 5-08 without a similar incident. This time no use of force or applying of 4-point restraints was warranted or deemed necessary by Capt. Weir or Lt. Madden for an incident the plaintiff admitted guilt to, but in the same reasoning for simply defecating Capt. Weir & Lt. Madden jointly put together an extraction team & deemed the use of 4-point restraints necessary for an incident the plaintiff was unilaterally (undeniably) found "not guilty" of.

In regards to the defendants statement that they acted in accordance with Directive 6.5 (Use of force) which is in accordance with Connecticut General Statues sections 18-81, 53a-18, 53a-19, 53a-20, 53a-21, & 53a-22 also Administrative Directives 2.7 "Training of Staff Development"; 6.4, "Transportation & Community Supervision of Inmates"; 6.6, "Reporting of Incidents"; 6.9 "Control of Contraband & Physical Evidence"; 7.2, "Armories"; 7.4, "Emergency Response Units"; 9.4 "Restrictive Housing".

The plaintiff contests. The plaintiff again emphasizes that defendant Weir did not find it necessary to use physical force by means of extraction team & 4-point restraints for an infraction that took place & the plaintiff admitted guilt to but found it necessary to use force on the plaintiff for defecating & flushing the toilet with a "Womens Courtesy" sign on the window. If following Directive 6.5 Section (4)(b) "General Principles" the issue of the plaintiff having a "Womens Courtesy" sign on the cell window & him flushing could've been addressed by verbal intervention to defuse any so-called issue but no one not one of the defendants or D.O.C. employee's ever followed that "General Principle" which is vital to the effectiveness of Directive 6.5. Rather it was decided by Capt. Weir to utilize 4-point restraints & a cell extraction team as means to gain compliance of what is still unknown... a person moving his bowels, flushing, with a "Womens Courtesy" sign on the window... Nor do any of them state anywhere on the record that they tried such or that it escalated the point of such intervention. The plaintiff was in a secured cell.

(see Exhibits L; M; N; O; P; Q; R; S; T.)

6.<sup>#</sup>) The Plaintiff does not contest paragraph (6). A cell extraction team was assembled & although paragraph (6) is accurate, Plaintiff feels it was unnecessary.

7.<sup>#</sup>) The Plaintiff disagrees with because the Defendants fail to mention that the Plaintiff was complying with all orders given, handcuffed behind the back, facing the back wall while standing inches from the wall with his back to the Defendants. Also that the reason used to justify force had happend at 10:05 am & the documentation provided by the Defendants does not even insinuate that force was being considered at the least, at that time but now (5) five hours later because the Plaintiff is defecating he is now considered a threat to himself, others & the facility. (5) five hours later. The Plaintiff is accused of attempting to flood his cell but there is no evidence of such then or now. The Plaintiff doesn't even have the infraction that he is accused of on his disciplinary history & was found not guilty but the Defendants refuse to provide such to the Plaintiff & this court. Also they fail to state that the Plaintiff sustained injury to his nose which he reported while being recorded on camera.

(see Exhibits P; Q; U;)

8.<sup>#</sup>) The Plaintiff contests in part to paragraph (8). He was placed on the bed & restrained but the injury on the Plaintiff's nose "was" complained about on camera while asking for the camera to be placed on his face which only happend after R.N. Jubrey cleaned the cut while the Plaintiff legs were being strapped in. R.N. Jubrey never recorded the Plaintiffs injury on the Medical Incident Report but described the injury on

p. 6# camera trying to minimize the injury.
(see Exhibits U; V.)

9#) The Plaintiff agree's with paragraph (9) but notes that the leg straps would come loose by simply wiggling his legs.

10#) Paragraph (10) the Plaintiff contests in part. C/O Laas "did not" remove the key from the restraint. C/O Thibodeau broke the handcuff key off inside the restraint & the Plaintiff informed Lt. Madden of such on camera & that "he would have to remove it sooner or later." Nothing was done in regards to the restraint by any of the Defendants. All the Defendants were present when this was said so it was known about the broken handcuff holding the Plaintiff to the bed also about the risk of detrimental injury.
(see Exhibits U; )

11#) The Plaintiff contests in part & agree's in part. The Plaintiff was on a mattress & could not be scratched by anything. The injury took place when the shield was used on the Plaintiff while he was compliant facing the cinder block wall & restrained behind the back. The Defendants C/O LaRosa, C/O Thibodeau, & C/O Carl running at full speed armed with a shield wieghing over 400 lbs combined used the shield to pin the Plaintiff against the wall (as they word it) causing the Plaintiff's face to smash against the wall & cause the injury to the Plaintiff's nose. RN Jubrey on camera mentioned the injury while the Plaintiff was being (initially) strapped to the bunk. (see Exhibits U; W; X)

12#) The Plaintiff contests paragraph (12). The Defendants admit in paragraph (12) that they don't know how the Plaintiff sustained the injury. For them to add that they did not cause the injury is contradicting.
(see Exhibit U)

13#) The Plaintiff contests paragraph (13). The officers whom entered the cell at 5am. were different officer's & they "did not" know why they were unable to remove the restraint. The Plaintiff notified those officer's about the handcuff key being broken off inside the handcuff. None of these officer's knew of the broken handcuff. Prior to coming to feed the Plaintiff none of the Defendants Capt. Weir, Lt. Madden, C/o De Rito, C/o Thibadeau, & C/o Carl reported the broken key inside the handcuff nor did they document it. As it is claimed that C/o Laos removed the key from the handcuff this wasn't documented nor provided any such evidence of such.
(see Exhibits U & Defendants Exhibit B)

14#) The Plaintiff doesn't contest paragraph (14) at all.

15#) The Plaintiff contests paragraph (15). According to the Defendants paragraph (14) it took (20) twenty minutes to come back & relieve the restraint from the Plaintiff's right wrist. This was enough time for a "heart attack", "asthma attack", "siesure", or any detrimental disaster "fire, etc." to have caused serious harm even death to the Plaintiff. The Plaintiff was face down on the bunk a very difficult position to recieve Medical treatment in case of an emergency. According to Defendants paragraph (19) "Staff did not suspect the handcuff was broken", with that statement it is impossible for the staff to have been prepared to deal with the broken restraint in case of an emergency. They took substantial time dealing with it at a regular paced enviorment. The Defendants Capt. Weir, Lt. Madden, C/o De Rito, C/o Thibadeau, & C/o Carl did not notify any of the next shift custody supervisors of the condition of the restraint knowing the condition.
(see Exhibit U & Defendants Exhibit B)

16<sup>#</sup>) The Plaintiff contests paragraph (16) in whole. The authorization of an extraction team to be used to extract the Plaintiff from the cell without any prior intervention as required by Directive 6.5 Use of Force, none of the defendants attempted or made any effort to order nor ask the Plaintiff to be handcuffed to comply with any direct order. Nor does any defendant state that they gave the Plaintiff any order prior to the assembling of the extraction team. Point being every reason given to assemble use, or enforce the use of an extraction team none fit the criteria of the situation which was applied in this case. (See Exhibits U, D, E, F, G, H, I, J, K, Defendants Exhibit B)

The use of 4 point restraints was excessive use of force for the reason used to justify it's application. Which by the defendants Capt. Weir, Lt. Madden, & C/O Carl account the Plaintiff was allegedly attempting to flood his cell toilet & purposefully obstructing the view of the cell. There is no physical evidence to support such but "if" this was true it could have been addressed with verbal intervention rather than 4 point restraints. Rather evidence to support the contrary. At 1:45 pm a entry was made into the log book of the unit that the Plaintiff was "flooding his cell toilet" "Water was shut off to his tier". Then in the "Incident Report" (page 1<sup>#</sup>) It states the Plaintiff "was flushing 15-20 times" clearly enough to cause a (2) gallon toilet to overflow numerous gallons of water per flush. Capt. Weir "touring from cell to cell" was the 2:05 pm log book entry in the unit but Capt. Weir states "she does not recall being present" when asked did she observe anything to warrant a disciplinary report when she did her cell to cell tour & entered the Plaintiff's cell. None of the defendants reported any damage to cell. There is no & was no evidence provided that presented any light of justification to say the Plaintiff "purposefully" with the intention obstructing the view of the cell, covered the window. Now the justification used for 4 point restraints was

the 10:05 am incident which was not addressed nor mentioned for 5 hours, although as stated by C/O Roberts Plaintiff was removed from the dayroom with no further incident. Which means there's no further justification for any further action. Also the Plaintiff was vindicated of any wrong doing by being found not guilty of the charge of him covering his cell window with intent to obstruct & flood the toilet.

(Exhibits D; E; R)

When the extraction team was ordered they entered the cell and for C/O De Rota to use the shield against the Plaintiff while handcuffed behind the back facing the wall with his back to the Defendants Capt. Weir, Lt. Madden, C/O De Rota, C/O Thibodeau & C/O Corl, as ordered all by Lt. Madden whom also ordered the shield to be used against the Plaintiff resulting in the Plaintiff's head & face area smashing into the wall causing a bump & cut on the nose while complying with all orders & no prior verbal intervention. While restrained to the bunk face down C/O Corl was intentionally standing on the Plaintiff's right arm that was partially hanging off the bunk. The Plaintiff complained numerous times for the Defendant C/O Corl to get off the Plaintiff's arm due to the pain. C/O Thibodeau while changing the right wrist restraint from a soft restraint to a hard restraint broke the handcuff key off inside the restraint then tightend the restraint until circulation was cut off. The Plaintiff complained to Lt. Burrios of the numbness to his right arm & hand to no avail.

(See Exhibits P; F; U; Y.)

17\*) The Plaintiff does not contest paragraph (17) but states it was an incident... The Plaintiff sustained injuries physical & was placed on 4 point restraints for no legitimate or penological reason.

18#) The Plaintiff does not contest paragraph (18)

19#) The Plaintiff contests paragraph (19) in part but disagree's completely at the accusations that he withdrew his level (1) one Grievance. The Plaintiff was never seen or given an outcome to his level (1) one Grievance at no time what so ever. Had the Plaintiff infact withdrawn his Grievance this would mean that the Grievance was logged as recieved as supposed to by policy governing the Grievance proceedure. The Defendants simply state there is no Record! This is impossible unless they have something to hide. Secondly the Defendants response to the Plaintiff's level (2) two appeal was down graded to a level (1) one Grievance which the Plaintiff appealed & recieved a level (2) two response. Then Refiled all over again as told to & never recieved any response to any level one two or three. Grievances.
(See Exhibit Z) (Defendants I)

20#) The Plaintiff contests in part to paragraph (20) the reason used to justify the authorization of 4 point restraints was Interfering with Safety or Security. The Destruction of State Property which the Plaintiff pled guilty to took place at 10:05 a.m. & it was deemed that no force was necessary. Now almost (5) five hours later the Plaintiff is falsely accused of tampering or Interfering with Safety or Security then this was justified to be enough to 4 point restrain the Plaintiff. The Plaintiff was vindicated of this offense by being found not guilty. These were (2) two seperate incidents jammed together to justify a lie.
(See Exhibits J, R)
x Eduardo Martinez
Eduardo Martinez #234198 - P.o. Box 1065 C.C.I. Somers Ct 06071