UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDUARDO MARTINEZ                     :
                                     :              PRISONER
            v.                       :  Case No.  3:00CV1140 (DJS)
                                     :
CAPTAIN WEIR, ET AL.[1]              :


RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Eduardo Martinez, has filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915. He alleges inter alia that the defendants used excessive force against him when they entered his cell to apply four point restraints on October 28, 1999, and later failed to ensure his safety when they neglected to remove a defective wrist restraint in a timely manner.  Pending is the defendants' motion for summary judgment.  For the reasons that follow, the motion for summary judgment **(dkt. # 49)** is **denied part and granted in part**.

I.   FACTS[2]

In October 1999, the plaintiff was incarcerated at the Walker Reception and Special Management Unit prison facility

---

[1]   The named defendants are Captain Kim Weir, Lieutenant Michael Madden, Correctional Officers Fred DeRota, Michael Thibodeau and Edward Corl.

[2]  The facts are taken from the defendants' Local Rule 56(a)1 Statement, the exhibits attached to the statement including the videotapes of the events that occurred on October 28, 1999, the Affidavits of Kim Weir, Michael Madden and Edward Corl, the Plaintiff's Local Rule 56(a)2 Statement and exhibits attached to the Statement and the Plaintiff's Affidavit and Declaration.

("Walker") in Suffield, Connecticut.  On October 28, 1999, the
plaintiff was on full restraint status.  That morning a
correctional officer escorted the plaintiff to the day room of
the segregation unit for recreation.  Because plaintiff was on
full restraint status, he remained in his restraints.  While he
was in the day room, the plaintiff, spit on the windows and
scraped paint off the doors with his handcuffs.  At approximately
10:55 a.m., a correctional officer issued the plaintiff a
disciplinary report for destruction of state property.  On
November 1, 1999, the plaintiff pleaded guilty to the charge.
Officers escorted the plaintiff back to his cell and he was
secured in his cell without further incident.  At approximately,
1:45 p.m. that afternoon, the plaintiff covered his cell door
window.  When a correctional officer heard the plaintiff
repeatedly flushing the toilet in his cell, he proceeded to the
cell to investigate the matter.  He shut off the water to
plaintiff's cell when he could not see in the cell window and
plaintiff refused his orders to remove the covering from the
window.  At approximately 2:05 p.m., defendant Weir toured the
plaintiff's housing unit and looked into the plaintiff's cell,
but did not examine the cell for water damage.

    At approximately 3:00 p.m, pursuant to an order from
defendant Weir, defendant Madden assembled an extraction team to
enter plaintiff's cell and place him in four point restraints;

which would be applied to his arms and legs.  Approximately ten minutes later, defendant Madden ordered the plaintiff to place his hands in the slot of the cell door to be handcuffed.  The plaintiff complied without incident.  Defendant Madden then ordered the plaintiff to move to the back of the cell and to remain still.  The plaintiff complied without incident.  Then defendants Corl, Thibodeau, DeRota and Madden and two other correctional officers entered plaintiff's cell using a shield to contain the plaintiff against the wall.  The plaintiff offered no resistance.

Defendants Madden, Corl, Thibodeau and DeRota strip searched the plaintiff and placed him face down on the bunk.  The defendants then applied soft restraints to all four of the plaintiff's limbs and left the cell.

At approximately 3:35 p.m., the defendants returned to the cell because the plaintiff had freed himself from the leg restraints.  The defendants then applied hard restraints to all four of plaintiff's limbs.  While applying the hard restraints, defendant Thibodeau had difficulty removing the key from the handcuff on plaintiff's right wrist.  During the application of hard restraints, the plaintiff complained of a cut on his nose. The nurse who checked the plaintiff's restraints noted a superficial abrasion and bump on the plaintiff's nose.  Defendant Weir was present for some portions of the restraint process.

At approximately 5:00 p.m., a prison official came to the plaintiff's cell to release him from the restraints to permit him to eat dinner.   The prison official was unable to unlock the plaintiff's right wrist handcuff.  At approximately, 5:20 p.m., the official returned to plaintiff's cell with bolt cutters.  At approximately 5:45 p.m., the official successfully removed the handcuff.  Prison officials, removed the plaintiff from four point restraints at 7:00 p.m., without incident.  On or about November 9, 1999, prison officials transferred the plaintiff to a correctional facility in Virginia.

## II.  **STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56©), Fed. R. Civ. P.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'" Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"

4

Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.)
(quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965
(1992).  After discovery, if the nonmoving party "has failed to
make a sufficient showing on an essential element of [its] case
with respect to which [it] has the burden of proof," then summary
judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986).

When a motion for summary judgment is supported by
documentary evidence and sworn affidavits, the nonmoving party
"may not rest upon the mere allegations or denials of the adverse
party's pleading, but the adverse party's response, by affidavits
or as otherwise provided in this rule, must set forth specific
facts showing that there is a genuine issue for trial."  Fed. R.
Civ. P. 56(e); see also Anderson, 477 U.S. at 256.  The nonmoving
party must present "significant probative evidence to create a
genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-
270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  A
party may not rely "on mere speculation or conjecture as to the
true nature of the facts to overcome a motion for summary
judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir.
1986), cert. denied, 480 U.S. 932 (1987).

The court resolves "all ambiguities and draw[s] all
inferences in favor of the nonmoving party in order to determine
how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.

Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992).  A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements.  See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978).  Nor may he rest on the "mere allegations or denials" contained in his pleadings.  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

Where one party is proceeding pro se, the court reads the pro se party's papers liberally and interprets them to raise the strongest arguments suggested therein.  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion" unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

III. **DISCUSSION**

The defendants move for summary judgment on six grounds. They argue that (1) the Eleventh Amendment bars any claims against them in their official capacity; (2) the State is not a person subject to liability under 42 U.S.C. § 1983; (3) the plaintiff has failed to exhaust his administrative remedies as to the claims in the amended complaint; (4) the plaintiff fails state a claim upon which relief may be granted; (5) they are protected by qualified immunity; and (6) the court should decline to exercise supplemental jurisdiction over any state law claims.

A.   Eleventh Amendment and Liability of State of Connecticut

The defendants contend that any claims against them in their official capacities for monetary damages are barred by the Eleventh Amendment.  The plaintiff responds that he is only suing the defendants in their individual capacities.  On the first two pages of the amended complaint, the plaintiff clearly indicates that he suing the defendants in their individual capacities only. Accordingly, the motion for summary judgment is denied as moot on the ground that plaintiff's official capacity claims for monetary damages are barred by the Eleventh Amendment.

The defendants also contend that the plaintiff's official capacity claims are barred because the State is not a person subject to liability under 42 U.S.C. § 1983.  Because the plaintiff does not sue the defendants in their official

capacities, the motion for summary judgment is denied on this ground as well.

B.    Exhaustion of Administrative Remedies

Defendants move for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies before commencing this action because a copy of a level 2 Inmate Grievance dated January 18, 2000, indicates that the plaintiff withdrew his Level 1 Inmate Grievance.  In response, the plaintiff contends that he did exhaust his administrative remedies twice and submits copies of his attempts to exhaust his remedies.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust "administrative remedies as are available" before bringing an "action . . . with respect to prison conditions."  The Supreme Court has held that this provision requires an inmate to exhaust administrative remedies before filing any type of action in federal court, see Porter v. Nussle, 534 U.S. 516, 532 (2002), even if the specific type of relief the inmate desires is not available through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).

In reviewing a claim of failure to exhaust administrative remedies, the court considers four questions: (1) were administrative remedies available to the inmate; (2) did

8

defendants forfeit their affirmative defense of failure to exhaust administrative remedies by failing to raise or preserve that claim; (3) whether any defendant is estopped from raising this claim because, by his actions, he inhibited the inmate's attempts to exhaust his administrative remedies; and (4) if administrative remedies were available to the inmate and defendants neither forfeited their defense nor inhibited the inmate from exhausting his remedies, whether special circumstances have been alleged that would justify the inmate's failure to comply with the exhaustion requirement.  See Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004).

The administrative remedies for the Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Grievances.  During the relevant time period, section 6(A) provided that the following matters were grievable:

1. The interpretation and application of policies, rules and procedures of the unit, division and Department.
2. The existence or substance of policies, rules and procedure of the unit, division and Department . . . .
3. Individual employee and inmate actions including any denial of access of inmates to the Inmate Grievance Procedure other than as provided herein.
4. Formal or informal reprisal for use of or participation in the Inmate Grievance Procedure.
5. Any other matter relating to access to privileges, programs and services, conditions of care or supervision and living unit conditions within the authority of the Department of

          Correction, to include rights under the
          Americans with Disabilities Act, except
          as noted herein.
    6.    Property loss or damage.

The plaintiff's excessive force claim and his claim that defendants failed to ensure his safety when they neglected to remove the defective wrist restraint in a timely manner are included within the list of grievable matters at items 3 and 5.

In addition, the grievance procedures provide that if a timely response to a level 1 grievance is not received, the inmate may file a level 2 grievance. (See Administrative Directive 9.6, §16, Defs.' Mem. Ex. H.) Thus, both levels of the grievance process were available to the plaintiff.

Defendants asserted the affirmative defense of failure to exhaust administrative was remedied in their answer to the amended complaint and in this motion. Thus, defendants have not forfeited their right to assert this defense.

The third question the court must consider is whether, by their actions, the defendants inhibited the plaintiff from filing grievances and exhausting his administrative remedies. The Second Circuit has held that defendants' threats or intimidating conduct can estop them from asserting the affirmative defense of failure to exhaust administrative remedies. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004). There, the prisoner was threatened, beaten, denied grievance forms and writing implements and transferred to another correctional facility. See

10

id. at 162.

In support of their argument that the plaintiff has not exhausted his administrative remedies prior to filing his lawsuit, the defendants rely solely on a copy of a Level 2 Inmate Grievance dated January 18, 2000, which contains the response by Interstate Compact Coordinator Lynn Milling dated February 8, 2000.  The defendants did not file an affidavit of the grievance coordinator in support of their argument.

In the January 18, 2000 Level 2 Grievance, the plaintiff explains that he is filing a Level 2 Grievance because he never received a response to the Level 1 Grievance that he filed on October 29, 1999.[3]  In response to the Level 2 Grievance, Lynn Milling, Interstate Compact Coordinator, informed the plaintiff that she had contacted the grievance coordinator at Walker regarding the Level 1 Grievance.  The grievance coordinator indicated that the plaintiff had not received a response to his Level 1 Grievance because the plaintiff had withdrawn it when he learned that an investigation of the incident would be undertaken by prison officials.  Ms. Milling then addressed the plaintiff's claims concerning the use of excessive force and noted in her response that she was treating the Level 2 Grievance as a Level 1 Grievance.  The plaintiff appealed the grievance on February 17,

---

[3]    At the time the plaintiff filed this grievance, he was incarcerated in Virginia.

11

2000.  The Level 2 Grievance was received in the Interstate
Compact Office on March 2, 2000.  On March 17, 2000, Ms. Milling
sent the plaintiff a memorandum indicating that she was
transferring his Level 2 Grievance to the Grievance Coordinator
at Walker for processing.

On April 4, 2000, James Huckabey, Complex Warden of the
State of Connecticut Department of Correction, informed the
plaintiff that he could not respond to the Level 2 Grievance
because there was no record of his Level 1 Grievance.  He
recommended that the plaintiff file a new Level 1 Grievance.  On
April 8, 2000, the plaintiff filed a new Level 1 Grievance.  The
plaintiff appealed the Level 1 Grievance to Level 2 on May 10,
2000.  On June 10, 2000, the plaintiff appealed the Level 2
Grievance to Level 3.  The plaintiff has provided evidence that
he attempted to exhaust his administrative remedies not once, but
twice prior to filing this lawsuit.  Accordingly, the defendants'
motion for summary judgment is denied on the ground that the
plaintiff failed to exhaust his administrative remedies.

C.   <u>Failure to State a Claim</u>

The plaintiff raises both a claim of deliberate indifference
to his safety and a claim of excessive use of force.  The
defendants contend that the plaintiff has failed to allege facts
to support a claim of a constitutional violation under either
standard.

12

1.   Deliberate Indifference to Safety

The plaintiff alleges that the defendants were deliberately indifferent to his safety when they failed to remove the defective wrist restraint in a timely manner.  He claims that if he had suffered a heart attack, an asthma attack, a seizure or if there had been a fire, the defendants would have been unable to remove the restraint in time to present him from suffering injuries as a result of those conditions.  The defendants contend that the plaintiff has failed to allege facts to support a claim that they were deliberately indifferent to his safety when they failed to remove the defective wrist restraint when they first had difficulty removing the key from it.

The Supreme Court has defined the contours of the Eighth Amendment protection against cruel and unusual punishment, made applicable to the states by the Fourteenth Amendment, as follows: "The Eighth Amendment's bar on inflicting cruel and unusual punishments...'proscribe[s] more than physically barbarous punishments.'  It prohibits penalties that are grossly disproportionate to the offense as well as those that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity and decency." Hutto v. Finney, 437 U.S. 678, 685 (1978) (citations omitted).  See also Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  There is no static test for determining whether conditions of confinement are cruel and unusual.  See

Rhodes, 452 U.S. at 346.  The Eighth Amendment must "draw its meaning from the evolving standards of decency that mark the progress of a maturing society."  Id.

The Second Circuit, in addressing the needs protected by the Eighth Amendment, has stated that sentenced prisoners are entitled only to "adequate food, clothing, shelter, sanitation, medical care and personal safety."  Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds sub nom. Bell v. Wolfish, 441 U.S. 520 (1979); Lareau v. Manson, 651 F.2d 96, 106 (2d Cir. 1981).  Not every governmental action affecting the interests or well-being of a prisoner is actionable under the Eighth Amendment.  "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."  Whitley v. Albers, 475 U.S. 312, 319 (1986); see also Gaston v. Coughlin, 249 F.3d 156, 163 (2d Cir. 2001).

To prevail on a claim that conditions of confinement constitute cruel and unusual punishment, an inmate must again establish objective and subjective components of the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  First, the inmate must show that he has suffered a "sufficiently serious" deprivation in objective terms, that is, that he has been deprived of the minimal necessities of life.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  An inmate also must

14

present evidence that, subjectively, the charged prison official
acted with "a sufficiently culpable state of mind." Hathaway, 37
F.3d at 66.  "[A] prison official does not act in a deliberately
indifferent manner unless that official 'knows and disregards an
excessive risk to inmate health or safety; the official must both
be aware of facts from which the inference could be drawn that a
substantial risk of serious harm exists, and he must also draw
the inference.'"  Id. (quoting Farmer v. Brennan, 511 U.S. 825,
837 (1994).

     The plaintiff does not allege or provide evidence to support
his claim that the delay in removing the broken handcuff
endangered his safety.  First, any claim that the plaintiff might
have suffered a heart attack, an asthma attack or a seizure or
that there might have been a fire during the time he was
restrained by the defective wrist restraint, is speculative.  The
plaintiff has presented no evidence that any of these conditions
existed when he was confined in the defective restraint.  Second,
it is evident from the videotapes documenting the placement of
the plaintiff in four point restraints that the wrist restraint
consisted of a chain that was attached to a handcuff.  Defendant
Thibodeau placed the handcuff on the plaintiff's wrist and then
attached the chain to under side of the bed on which the
plaintiff lay face down.  Defendants Weir, Madden and Corl have
filed affidavits indicating that in the event of an emergency,

the wrist restraint could have easily been detached from the bed by removing the chain attached to the under side of the bed. The court concludes that the broken handcuff did not constitute a serious deprivation of the plaintiff's basic human needs. Accordingly, the plaintiff has failed to meet his burden of demonstrating that the defendants' alleged failure to remove the defective wrist restraint at the time the key got stuck in the restraint constituted deliberate indifference to plaintiff's health and safety in violation of his rights under the Eighth Amendment. The motion for summary judgment is granted as to this claim.

2.    Claim of Excessive Force

The defendants argue that the plaintiff has failed to offer any evidence demonstrating that they used excessive force against him when they entered his cell to apply four point restraints and subsequently applied soft and hard four point restraints to his limbs. The plaintiff contends that he suffered an injury to his nose as a result of the force used when the defendants initially entered the cell and that the application of four point restraints was not made in an effort to restore discipline or order, but was made maliciously to cause harm.

In Hudson v. McMillan, 503 U.S. 1 (1992), the Supreme Court established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced

inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances.  "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 6-7 (citing Whitley v. Albers, 475 U.S. 312, 320-321 (1986)).  The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id. at 7 (internal quotations and citation omitted).  The extent of the injury suffered by the inmate is also a factor in determining whether the force was necessary to restore order or used maliciously to cause harm, but an inmate need not prove that he suffered a significant injury to state a claim of excessive force.  See Hudson, 503 U.S. at 9 ("[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated" irrespective of whether significant injury is present); Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) ("no such showing of extreme injury is required when the claim is that prison officials used excessive force"); Blyden v. Mancusi, 186 F.3d

17

252, 263 (2d Cir. 1999) (malicious use of force to cause harm constitutes an "Eighth Amendment violation[] per se . . . whether or not significant injury is evident.").

The defendants first argue that the plaintiff did not incur the injury to his nose as a result of their application of four point restraints and that even assuming the injury was due to their conduct, it was <u>de</u> <u>minimus</u>.  The parties agree that the plaintiff suffered an injury to his nose at some point between the time the defendants first entered his cell to apply soft restraints and the application of hard restraints.  The plaintiff avers that the injury occurred when the defendants rushed into his cell and pushed him up against the wall with the shield. Defendants Weir, Corl, and Thibodeau aver that they observed no injuries and the plaintiff complained of no injuries before or immediately after the application of soft restraints.

The plaintiff cannot be heard on the videotape complaining about an injury to his nose during or after the time the defendants entered the cell to subdue him and place him in soft restraints.  When the defendants later enter the cell to apply the hard restraints, the plaintiff complains of an injury to his nose and the nurse remarks that the plaintiff has an abrasion and bump on his nose and a photograph was later taken of the plaintiff's injury.  The plaintiff declares that later that day, he complained to a nurse of a headache due to Officer DeRota

18

smashing his face against the wall with the shield.  The
plaintiff has also submitted a photograph taken upon his arrival
at the Virginia prison facility some twelve days after the
incident which he claims showed bruises under his eyes.  The
plaintiff claims that the bruises were due to force used to pin
him up against the wall when the defendants first entered his
cell on October 28, 1999.  Defendants aver that they did not
cause the plaintiff to suffer any injuries as a result of the
application of restraints and they do not know how plaintiff
incurred the abrasion to his nose.

There are issues of material fact in dispute as to the cause
of plaintiff's injury to his nose and whether he suffered any
other injuries as a result of the application of four point
restraints.  Even if the plaintiff only suffered minor injuries
as a result of the use of force, both the Supreme Court and the
Second Circuit have held that a significant or lasting injury is
not necessary to state a claim of excessive force under the
Eighth Amendment.  See Hudson, 503 U.S. at 9 ("[w]hen prison
officials maliciously and sadistically use force to cause harm,
contemporary standards of decency are always violated"
irrespective of whether significant injury is present); Sims v.
Artuz, 230 F.3d 14, 21 (2d Cir. 2000) ("no such showing of
extreme injury is required when the claim is that prison
officials used excessive force").

19

The defendants also argue that even assuming the plaintiff suffered an injury as a result of the use of force necessary to place him in restraints, the force used was necessary to control the plaintiff who was violent, disruptive, and destructive and to maintain the safety of staff and other inmates at the facility. The evidence presented by both the plaintiff and the defendants does not support this contention.  It is undisputed that at approximately 10:00 a.m. on October 28, 1999, while the plaintiff was in the day room of his housing unit, he spit on the windows and scraped paint off the doors with his handcuffs.  A correctional officer issued the plaintiff a disciplinary report for destruction of property to which the plaintiff later pleaded guilty.  The parties also agree that the plaintiff did not exhibit any further disruptive or destructive behavior upon his return to his cell after the incident in the day room.  At approximately 1:45 p.m., the plaintiff covered the window in his cell door and repeatedly flushed the toilet.  In response, a correctional officer issued the plaintiff a disciplinary report for interfering with safety and security and turned off the water to plaintiff's cell because the plaintiff refused to remove the window covering and he thought the plaintiff might be attempting to flood the cell.  The disciplinary report was later dismissed.

The Day Watch log for plaintiff's housing unit indicates that Captain Weir toured the unit at 2:05 p.m. and Captain Weir

20

admits that she looked into plaintiff's cell during that tour.
She did not note any disruptive behavior on the part of the
plaintiff or water on the floor of the cell.

At approximately 3:00 p.m., defendant Madden assembled an
extraction team.  At 3:06 p.m., defendant Madden directed the
plaintiff to place his wrists through the slot in the cell door
to be handcuffed and then to stand with his face against the back
wall of the cell.  The plaintiff complied with both requests.
The extraction team, including defendants Madden, Corl, Thibodeau
and De Rota, then entered the plaintiff's cell, pushed the
plaintiff up against the cell wall with a shield, strip searched
him, moved him to the bed and applied restraints to his limbs.
The videotape shows that the plaintiff did not offer any
resistance during the restraint process and complied with all
orders from the defendants.

In view of these facts, the defendants have failed to
demonstrate the need to use force against the plaintiff at the
time in question, any relationship between the need to use force
and the application of four point restraints, any threat that
might reasonably have been perceived by the defendants or their
supervisors at the time they entered the cell to apply the
restraints, and any efforts made by the defendants "to temper the
severity of a forceful response." Hudson, 503 U.S. at 7.  Thus,
the defendants have not met the requirements of the excessive

21

force standard and are not entitled to judgment as a matter of law.  The motion for summary judgment is denied as to the excessive force claim.

D.  Qualified Immunity

The defendants argue that they are entitled to qualified immunity because they did not violate any clearly established statutory or constitutional rights of the plaintiff.  The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rodriguez v. Phillips, 66 F.3d 470, 475 (2d Cir. 1995) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether qualified immunity is warranted, the court first must address the question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a
> favorable view of the parties' submissions,
> the next, sequential step is to ask whether
> the right was clearly established.  This
> inquiry, it is vital to note, must be
> undertaken in light of the specific context
> of the case, not as a broad general
> proposition . . .  The relevant dispositive
> inquiry in determining whether a right is
> clearly established is whether it would be

22

> clear to a reasonable [state official] that
> his conduct was unlawful in the situation he
> confronted.

Id. (citing Wilson v. Layne, 526 U.S. 603, 615 (1999).

Viewed in a light most favorable to the plaintiff, the evidence demonstrates that there was no need for the application of four point restraints on the plaintiff at 3:00 p.m. on October 29, 1999, that the defendants could not have reasonably perceived that the plaintiff was or could be a threat to their security or the security of the prison and that the defendants failed to temper their use of force against the plaintiff.  Although the plaintiff may only have suffered minor injuries as a result of the application of restraints, a significant or lasting injury is not necessary to state a claim of excessive force under the Eighth Amendment.  See Hudson, 503 U.S. at 9.  The plaintiff has satisfied his burden of demonstrating that the force used against him by the defendants was excessive under the circumstances and that they violated his Eighth Amendment rights.

At the time of the incident in question, October 1999, the Supreme Court had determined that unnecessary and wanton infliction of pain through the use of excessive force constituted a violation of the Eighth Amendment.  See Whitley, 475 U.S. at 319 (citations omitted); Hudson, 503 U.S. at 7-9.  Thus, a reasonable person would have known that excessive force used in a way that unnecessarily and wantonly inflicted pain would

23

constitute a violation of the Eighth Amendment, while force used in a good faith effort to restore discipline would not.  Because the court has determined that the plaintiff has alleged sufficient facts to support a viable claim of excessive force, the court cannot conclude as a matter of law that the defendants' conduct was objectively reasonable.  Accordingly, the defendants are not entitled to qualified immunity as to the claim of excessive force and the motion for summary judgment is denied on this ground.

  E. <u>State Law Claims</u>

  The defendants also ask the court to decline to exercise supplemental jurisdiction over the plaintiff's state law claims. Supplemental or pendent jurisdiction is a matter of discretion, not of right.  Thus, the court need not exercise supplemental jurisdiction in every case.  <u>See</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 715-26 (1966).  The federal court should exercise supplemental jurisdiction and hear a state claim when doing so would promote judicial economy, convenience and fairness to the litigants.  The court should decline to exercise supplemental jurisdiction, however, when state law issues would predominate the litigation or the federal court would be required to interpret state law in the absence of state precedent.  <u>See</u> <u>Id.</u> at 726.  Because the plaintiff's Eighth Amendment excessive force claim will proceed against the defendants, the court retains

24

jurisdiction over any state law claims asserted against the defendants.

**IV.   <u>CONCLUSION</u>**

The Defendants' Motion for Summary Judgment **(Dkt. # 49)** is **GRANTED** as to the claim that the defendants were deliberately indifferent to plaintiff's health and safety in violation of his rights under the Eighth Amendment when they failed to remove the defective wrist restraint in a timely manner and **DENIED** as to the claim that the defendants used excessive force in violation of plaintiff's Eighth Amendment rights when they placed him in four point restraints and any claims that the defendants violated his rights under state law.

**SO ORDERED** this ___10th___ day of <u>October</u>, 2006, at Hartford, Connecticut.


**/s/DJS**

**_____**
**Dominic J. Squatrito**
**United States District Judge**