**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
**(Hartford)**

****************************************
EDUARDO MARTINEZ * 3:00 CV 1140 (DJS) (TPS)
*
V. *
*
CAPTAIN KIMBERLY WEIR, ET AL * JANUARY 26, 2007
****************************************

# SECOND AMENDED COMPLAINT

## PRELIMINARY STATEMENT

This is an action for money damages against the following Correctional Officers: Kimberly Weir, Michael Madden, Fred DeRota, Michael Thibodeau and Edward Corl. All defendants are sued, individually, for committing acts under color of law, and depriving the plaintiff, Eduardo Martinez, of his rights secured by the Constitution and laws of the United States as well as the laws of the State of Connecticut.

All of the aforementioned Correctional Officers while acting in their capacities of State of Connecticut Correctional Officers, on October 28, 1999 under color of law, with neither good reason nor justification terrorized, threatened, battered, restrained, punched and/or kneed Mr. Eduardo Martinez, in the following manner: On **October 28, 1999** at or around 10:55 am the plaintiff was taken from the day room to his cell. At approximately **2:05 pm** the plaintiff called C.O. Kimberly Weir "a dumb bitch" in her presence because of the dismissive way she treated the plaintiff's oral request that the water service be returned to his cell so he could wash his hands as he had just used the toilet in which he had recently defecated. At approximately **3:10 pm** co-defendants Michael Madden, Fred DeRota, Michael Thibodeau and Edward Corl entered the plaintiff's cell, as an extraction team and assaulted Mr. Martinez

before placing him on his bed in four point soft restraints at the direction of their superior officer C.O. Kimberly Weir. At no time between the time Mr. Martinez was placed in his cell and **3:10 pm**, did Mr. Martinez resist, fight, or otherwise act combatively toward any of the defendants or act as a danger to his own safety. At approximately **3:35 pm** Mr. Martinez was then placed in metal four point restraints at the direction of C.O. Kimberly Weir where he remained to restrained until **7 pm** that evening. Mr. Martinez requested medical intervention for the following injuries: Humiliation, degradation, injury to his head, nose, hand, pain to his head, hand from the defendants standing on it while it hung off the bed, laceration of inner right wrist where the plaintiff was cut by accident with a pair of bolt cutters which had to be used to remove one the handcuffs, bruises, swelling to his head and to the side of his face, and contusions about his body, physical pain and disability and fear for his security, safety, and life, creating mental and emotional anguish.

The aforesaid violent beating, restraint and other assaults caused the plaintiff physical injuries for which he still needs treatment but such treatment was denied him. The plaintiff believes that the defendants subjected him to the above excessive force of October 28, 1999 to intentionally and/or negligently inflict emotional distress upon him and to assault and batter him, and deny him medical care thereby subjecting the plaintiff to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States. Additionally, the defendants are also liable to the plaintiff for a violation of his Article I, § 9 Connecticut Constitutional right to be free from punishment not clearly warranted by law, battery, intentional and/or negligent infliction of emotional distress under the State of Connecticut's common law.

**COUNT ONE**
**FEDERAL LAW CLAIMS**

**JURISDICTION**

1. This action is brought pursuant to sections 1983, 1986 and 1988 of Title 42 of the United States Code and the First, Fourth, and Fourteenth Amendments to the U.S. Constitution. Jurisdiction is founded on 28 U. S .C. §1331 and §1343 (1)(2)(3)(4) and the aforementioned statutory and Constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court to prosecute causes of action arising under State law sounding in a State Constitutional claim and common law tort pursuant to 28 U. S. C. §1367(a).

**THE PARTIES**

2. During all times mentioned in this Complaint, the plaintiff, a Hispanic man, was, and he still is, an adult citizen of the United States. He was a sentenced prisoner and detained at Walker RSMU (Walker), Suffield, Connecticut at the time of the events described herein, and now resides at Corrigan Correctional Institution, Uncasville, Connecticut.

3. During all times mentioned in this Complaint, the defendants, Correctional Officers Captain Kimberly Weir (Capt. Weir), Lt. Michael Madden (Lt. Madden), Fred DeRota (DeRota), Michael Thibodeau (Thibodeau) and Edward Corl (Corl) were duly appointed employees of the Department of Corrections for the State of Connecticut acting in their official capacities. Each Defendant is sued only in his or her individual capacity.

4. During all times mentioned in this Complaint, the defendants, Capt. Weir, Lt. Madden, DeRota, Thibodeau and Corl acted under color of law, that is under color of the

Constitution, statutes, laws rules, regulations, customs and usages of the State of Connecticut and the United States.

5. At all times mentioned in this Complaint, the defendants acted willfully, jointly, in conspiracy and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant but each defendant failed and refused to perform such duty, thereby proximately causing the plaintiff's injuries.

7. During all times mentioned in this Complaint, the defendants and each of them separately and in concert acted jointly, willfully and in conspiracy with each other and each defendant aided and abetted the others in carrying out the acts and omissions described herein, and thereby deprived the plaintiff of his rights, secured to him by the Eighth and Fourteenth Amendments to the Constitution of the United States and the laws of the United States and the State of Connecticut.

8. During all times mentioned in this Complaint, and upon information and belief, all defendants were on duty.

**FACTS**

9. On October 28, 1999 at approximately **9:30 AM** while in the Day Room of Walker's segregation unit the plaintiff; hand-cuffed behind his back and shackled, used the handcuffs to scrape paint off of the Day Room doors and spat upon the walls whereupon the plaintiff was ordered and escorted back to his cell. The plaintiff complied without incident.

10. At approximately **1:40 P.M.** that same day the plaintiff put up a "women courtesy sign" on the window of the cell door in order to prevent Captain Kimberly Weir, a woman, from seeing in the cell while the plaintiff, a male, was using the toilet to defecate.

The plaintiff knew that Captain Kimberly Weir was supposed to tour his unit between 1:30 & 2 P.M..

11. The plaintiff flushed the toilet several times while seated upon it in an effort to prevent any odor from lingering.

12. A correctional officer by the name of Mr. Roberts told the plaintiff to remove the sign from the window, the plaintiff told him he would remove it once he was done with the toilet whereupon Mr. Roberts left the area and turned the water off to the plaintiff's cell.

13. The plaintiff finished using the toilet at approximately **2:05 P.M.** and he asked Mr. Roberts to turn the water on so that he could clean his hands.

14. Thereafter Capt. Weir entered the plaintiff's cell and asked why he was flooding his cell to which the plaintiff replied that there was not a drop of water on his floor and he turned on the light in his cell to prove it.

15. As Capt. Weir was exiting the plaintiff's cell he asked her if she would have his water turned back on so that he could wash his hands to which Capt. Weir replied, "I'll think about it." Whereupon, the plaintiff's door closed behind her.

16. Thereupon the plaintiff called Capt. Weir "a dumb bitch" in her presence and both parties exchanged insults.

17. At some point thereafter, the plaintiff's water was turned on; he washed his hands and went to sleep, while, upon information and belief, Capt. Weir ordered that the plaintiff be forcibly removed from his cell and then forcibly shackled to his cell bed in four point restraints in the prone position.

18. At approximately **3:10 P.M.** the same day co-defendant Lt. Madden woke the plaintiff up and told him that he was extracted; to be forcibly removed from his cell and Lt.

Madden attempted to goad the plaintiff into resisting his forcible removal from his cell by telling the plaintiff that he, the plaintiff, should not "punk out".

19. Lt. Madden then ordered the plaintiff to turn around so he could be handcuffed whereupon the plaintiff complied without resistance and the plaintiff was handcuffed. Lt. Madden told the plaintiff to walk to the rear of his cell and again the plaintiff complied without resistance.

20. Lt. Madden then told co-defendants De Rota, Thibodeau and Corl to "go get him" and seconds later the plaintiff was violently struck in the back of his head with a body shield with great force and impact.

21. The force of the violent blow of the body shield to back of the plaintiff's head resulted in his face being violently rammed into a bear cinder block wall that caused blood to flow from within the plaintiff's nostrils and from a laceration, caused by the blow, to the bridge of the plaintiff's nose. Upon information and belief, co-defendant De Rota was in charge of the body shield.

22. Lt. Madden told De Rota to remove the plaintiff's handcuffs and then told the plaintiff, now uncuffed, to place his hands on the cell wall and the plaintiff complied without resistance while he was experiencing dizziness from the aforementioned violence.

23. Lt. Madden ordered co-defendants Thibodeau and Corl to strip search the plaintiff; they did and the plaintiff complied with all of their orders during this period.

24. Lt. Madden then stated that the plaintiff was to be placed in four point restraints for kicking his cell door and disobeying direct orders.

25. Lt. Madden instructed co-defendants Thibodeau, Corl and De Rota to take the plaintiff to his cell bed, which they did and thereafter the plaintiff was put in four point

restraints as he lay on this stomach and during this time the plaintiff informed the co-defendants that he was bleeding both from within is nostrils and the laceration on the bridge of his nose, caused by the aforementioned battery, and that he needed medical help to no avail.

26. The leather restraints on the plaintiff's ankles were not applied properly which resulted in them coming off when the plaintiff moved his legs.

27. At approximately **3:35 PM** Capt. Weir ordered that the plaintiff be shackled with metal restraints.

28. CO Thibodeau broke the key off in the handcuff's key hole on the plaintiff's right wrist and as CO Corl held my arm, Thibodeau kept tightening the handcuff until all of the fingers of the plaintiff's right hand became numb.

29. The plaintiff asked Lt. Madden for help because the handcuff was too tight and the key was broken off within the handcuff's lock to which Lt. Madden responded, "You'll be alright" and then they left the cell.

30. At approximately **4 P.M.** the plaintiff told Warden Donahue of his plight and asked for his help whereupon the Warden replied, "You brought it on yourself." The Warden did not assist the plaintiff and the Warden departed.

31. At approximately **4:50 P.M.** a Captain arrived to give plaintiff his dinner; finding the plaintiff in restraints he attempted to free him but was unable to because of the broken handcuff lock.

32. At approximately **5:20 p.m.** the Captain returned with bold cutters.

33. At approximately **5:45 p.m.** the Captain successfully removed the handcuff after accidentally caused a laceration to the plaintiff's inner right wrist which has caused a permanent scar.

34. At approximately **7 p.m.** the plaintiff was finally released from the four point restraints without incident.

35. The plaintiff was issued two disciplinary reports (DR):

a. **Destruction of State Property**—Scraping paint off of day room door at approximately 10 a.m.

b. **Interfering with Safety & Security**—Erection of the Women Courtesy Sign at approximately 1:45 p.m.

However, the plaintiff was never issued a disciplinary report for Disobeying a Direct Order or for Causing a Disruption (kicking the cell door) the two grounds Lt. Madden gave for placing the plaintiff in four point restraints. (See paragraph **24**, above.)

36. The plaintiff pled guilty to the DR for scraping the cell door and not guilty to the DR for interfering with safety & security. The DR for interfering with safety & security was dismissed because the plaintiff had permission to put up the Women Courtesy Sign from the Unit Manager and co-defendant Capt. Weir.

37. The plaintiff requested medical intervention of the defendants for his injuries but he was denied the medical treatment and twelve (12) days later; to wit, November 9, 1999, the plaintiff was sent to a prison in Virginia.

38. As a consequence of the actions of the defendants herein described, and the omissions of the defendants, the plaintiff suffered: Humiliation, degradation, injury to his head, nose, hand, pain to his head, hand from the defendants standing on it while it hung off the bed, laceration of inner right wrist where the plaintiff was cut by accident with a pair of bolt cutters which had to be used to remove one the handcuffs, bruises, swelling to his head and to the side of his face, and contusions about his body, physical pain and disability and fear for his security, safety, and life, creating mental and emotional anguish.

39. In the manner described above, the defendants, by uniting in an act which constituted a wrong to the plaintiff, and by performing it under the aforementioned circumstances which fairly charge them with the consequences which follow, incurred a joint and several liability for the acts of each and all of the joint participants as they were acting in furtherance of a conspiracy to deprive the plaintiff of his civil rights. All of the defendants actively participated in the above-described wrongful acts and misconduct by cooperation, conspiracy and/or request, and as to each act complained of, lent aid or encouragement to the wrongdoer, thus ratifying and adopting each wrongful act for their own.

40. In the manner described in this Complaint, the defendants and each of them, separately, in concert and/or in conspiracy, willfully deprived the plaintiff of his rights to be free from illegally inflicted physical injury, right to bodily integrity, the right to be free from the conspiracy to conceal the abuse to which the plaintiff was subjected and otherwise deprive him of his civil rights and due process of law. All of these rights are secured to the plaintiff by the provisions of the Eighth, and Fourteenth Amendments to the United States Constitution and by Title 42 U. S. C. §1983.

41. The misconduct attributed to each of the defendants was a misuse of his authority that was personal to him and was not primarily employer rooted or reasonably incidental to the performance of employment duties, further, said misconduct was not designed to advance any interest of his employer, the State, and did not serve any legitimate State interest, rather the defendants' misconduct was motivated by purely personal considerations entirely extraneous to the employer's interest.

**COUNT TWO**
**STATE LAW CLAIMS**

1. Pursuant to the provisions of 28 U. S. C. §1367, the supplemental jurisdiction of this Court is invoked as to the claims of this count, which arise under the Constitution, statutes and common law of the State of Connecticut.

2. This is an action for money damages to redress the deprivation by the defendants of rights secured to the plaintiff by the State of Connecticut. The co-defendants with the assistance, complicity and in conspiracy with each other subjected the plaintiff to a violation of the plaintiff's rights to equal rights and his right to relative personal liberty, his right to adequate medical care, and his right to be free from physical abuse and injury under Art. I, § 9 of the Connecticut Constitution. Moreover, the co-defendants with the assistance, complicity and in conspiracy with each other subjected the plaintiff to battery, the intentional infliction of emotional distress, and/or negligent infliction of emotional distress.

3-44. Paragraphs 9 through 41 of Count One are hereby incorporated as paragraphs 3-41 of Count Two.

45. In the manner described above, the defendants and each of them committed a violation of the plaintiff's State Constitutional rights under Art. I, § 9, to be free from governmental abuse, to the right to be secure in his person as previously pled, and the right to adequate medical treatment. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 9 through 41 in Count One, above. The plaintiff is protected against such misconduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

46. In the manner described above, the defendants and each of them committed battery, in that they attempted with force and violence to do corporeal offense to the plaintiff, and were successful in that attempt, by inflicting upon the plaintiff's person severe physical injury without justification or excuse. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 9 through 41 in Count One, above. The plaintiff is protected against such conduct by the defendants under Connecticut law, the provisions of which are invoked under this Court's supplemental jurisdiction.

47. In the manner described above, the defendants further committed the tort of intentional infliction of emotional distress, in that they intentionally caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct, as described above. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 9 through 41 in Count One, above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provision of which are invoked under this Court's supplemental jurisdiction.

48. In the manner described above, the defendants further committed the tort of negligent infliction of emotional distress, in that they negligently and/or recklessly caused the plaintiff severe emotional distress by their intentional, extreme and outrageous conduct, as described above. The acts and omissions of the defendants, as outlined above, were the proximate cause of damages to the plaintiff as set out in paragraphs 9 through 41 in Count One, above. Therefore, the plaintiff is entitled to relief under the laws of Connecticut, and provision of which are invoked under this Court's supplemental jurisdiction.

***WHEREFORE***, the plaintiff, claims judgment against the defendants and each of them, jointly and severally, as follows:

A. Compensatory damages;

B. Punitive damages;

C. Attorney fees and costs of this action;

D. Such further relief as this Court deems appropriate to award.

EDUARDO MARTINEZ
THE PLAINTIFF

BY: ______________________

**ATTY. ERSKINE D. McINTOSH**
**FEDERAL BAR NO. CT 09743**
**THE LAW OFFICES OF ERSKINE D. McINTOSH, P.C.**
**3129 WHITNEY AVENUE, SECOND FLOOR**
**HAMDEN, CT 06518-2364**

**(203) 787-9994**
**FAX (203) 848-1213**

**COUNSEL FOR THE PLAINTIFF**

**CERTIFICATION**

This is to certify that a copy of the foregoing was sent by first-class mail, postage prepaid on this the 26 day of January, 2007 to:

Atty. Robert F. Vacchelli
Assistant Attorney General
110 Sherman Street
Hartford, Conn. 06105

______________________
**ATTY. ERSKINE D. McINTOSH**

19 COMPLAINT-AMENDED SECOND-MARTINEZ